```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

DR. EDWARD L. WOODS SR.,         )
                                 )
               Plaintiff,        )
                                 )
     v.                          )
                                 )        1:21-cv-116
GERBER LIFE INSURANCE COMPANY    )
and CRYSTAL CONRAD, A.C.         )
NEWMAN CLAIMS ASSOCIATE,         )
                                 )
               Defendants.       )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Before the court is the motion of Defendants Gerber Life Insurance Company ("Gerber") and Crystal Conrad to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6.) *Pro se* Plaintiff Edward L. Woods Sr. filed a response in opposition (Doc. 10), and Defendants replied (Doc. 11). For the reasons set forth below, the motion will be granted and the complaint dismissed.

### I. BACKGROUND

The facts as alleged in the complaint and taken in the light most favorable to Woods show the following:

From January 1, 2009, to January 1, 2016, Woods was enrolled in a family accidental death policy that was issued and administered by Gerber. (Doc. 2 at 1.) Both Woods and his wife, Betty Woods ("Mrs. Woods"), were covered by the policy. (Id.)

The policy provided certain benefits should any covered individual be injured due to an accident.  (See Doc. 2-1.)  The policy defined "[a]ccidental bodily injury" as that which is "direct and independent of any other cause" and "requires treatment by a licensed physician or surgeon."  (Id. at 3.)  Under its "General Exclusions," the policy indicated that "[b]enefits are not paid for any loss caused by or resulting from[] . . . any kind of disease; [or] medical or surgical treatment (except surgical treatment required by the accident) . . . ."  (Id. at 18.)  The policy required that "due written proof [of loss] . . . be given . . . within 180 days after the date of loss" and that "in no event will a loss be considered if due written proof for that loss is furnished more than 2 years after the date the loss was incurred." (Id.)  Finally, the policy indicated that no legal action could be brought "after 3 years from the date written proof of loss was required to be furnished."  (Id. at 19.)

On September 18, 2012, Mrs. Woods was admitted to the hospital with difficulty breathing "felt secondary to [congestive heart failure]."  (Doc. 2-11 at 4.)  On September 20, 2012, Mrs. Woods underwent a cardiac catheterization procedure.  (Id.; Doc. 2 at 1.)  During that procedure, she was given an infusion of contrast dye.  (Doc. 2 at 1.)  In the two days following that procedure, Mrs. Woods began demonstrating symptoms of impaired kidney functioning.  (Id. at 3.)

2

On September 26, 2012, Mrs. Woods passed away. (Id. at 1.) Her certificate of death indicates that the immediate cause of death was cardiopulmonary collapse, accompanied with the underlying causes of metabolic acidosis and cardiogenic shock. (Doc. 2-8.) The certificate also identifies renal failure as a significant condition contributing to death but not resulting in the underlying causes of death. (Id.)

In August 2017, Woods's son, Edward L. Woods Jr., learned from Dr. Thomas J. O'Neill, a treating physician, that the cause of Mrs. Woods's death was an accidental excess infusion of contrast dye during the cardiac catheterization procedure. (Doc. 2 at 1.) Based on this information, on August 27, 2017, Woods filed a claim with Gerber under the family accidental death policy. (Id.) The claim was submitted to Defendant Conrad, a claims associate with A.C. Newman. (Id.)

On December 13, 2017, Gerber denied benefits on the grounds that Mrs. Woods's death was not covered under the policy. (Doc. 2-5 at 1.) Following this determination, Woods pursued a voluntary internal appeal of the decision. (Id.) On April 20, 2018, Gerber denied the voluntary appeal on the same grounds as its initial denial. (Id. at 2.) On June 12, 2018, Woods requested that Gerber reconsider its denial, which Gerber treated as a second voluntary appeal. (Id. at 1.) For the same reasons stated in its prior denials, the second voluntary appeal was denied on January 10,

3

2019.  (Id.)  At that time, Gerber indicated that it would "not accept any further requests for appeal."  (Id.)

On January 6, 2021, Woods filed suit against Defendants in Durham County Superior Court.  (Doc. 2.)  Defendants timely removed this action to this court (Doc. 1) and subsequently filed a motion to dismiss for failure to state a claim, alleging that Woods's claim is both time-barred and not covered under the policy (Doc. 6).  The motion is now fully briefed and ready for resolution. (See Docs. 7, 10, 11.)

**II. ANALYSIS**

    **A.  Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. (8)(a)(2).  Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94

4

(2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegation 'to raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" Sauers v. Winston-Salem/Forsyth Cnty. Bd. Of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (alteration in original) (quoting Twombly, 550 U.S. at 555). "[T]he complaint must 'state[] a plausible claim for relief' that permit[s] the court to infer more than the mere possibility of misconduct based upon 'its judicial experience and common sense.'" Coleman v. Md. Ct. App., 626 F.3d 187, 190 (4th Cir. 2010) (alterations in original) (quoting Iqbal, 556 U.S. at 679). Thus, mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

As noted, Woods proceeds *pro se*. Although courts must construe *pro se* complaints liberally, "generosity is not a fantasy." Bender v. Suburban Hosp., Inc., 159 F.3d 186, 192 (4th Cir. 1998). The court is not expected to plead a plaintiff's claim for him, id., or "construct full blown claims from sentence fragments," Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Likewise, a court should not "conjure up questions

5

never squarely presented." Id.

In ruling on a motion to dismiss, courts may consider documents attached to either the complaint or the motion to dismiss without converting the motion into one for summary judgment so long as the documents are "integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

**B.  Timeliness of Woods's Claim**

Defendants first argue that Woods's claim is time-barred under the three-year statute of limitations applicable to breach of contract actions in North Carolina. Defendants allege that the statute of limitations began to run on December 13, 2017, when Gerber first denied Woods's accidental death benefits claim. (Doc. 7 at 15.) Under Defendants' reasoning, Woods's claim was required to be filed by December 13, 2020, and, as Woods did not file suit until January 8, 2021, his claim is untimely. (Id.) In response, Woods argues that his claim is timely because the statute of limitations did not begin to run until January 10, 2019, when Gerber issued its final denial of Woods's claim and indicated that it would not accept any further appeals. (Doc. 10 at 2.)

A motion to dismiss under Rule 12(b)(6) "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Nevertheless,

6

a district court may reach the merits of an affirmative defense "if all facts necessary to the affirmative defense clearly appear on the face of the complaint," id. (emphasis and alteration omitted), including where "a complaint show[s] that the statute of limitations has run on the claim," see Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996) (quotation omitted).

A three-year statute of limitations governs breach of contract claims under North Carolina law. N.C. Gen. Stat. § 1-52(1); Penley v. Penley, 332 S.E.2d 51, 62 (N.C. 1985). The limitations period for civil actions starts running when the plaintiff's cause of action accrues. N.C. Gen. Stat. § 1-15; McCutchen v. McCutchen, 624 S.E.2d 620, 623 (N.C. 2006). Accrual is measured "from the time when the first injury was sustained . . . . When the right of the party is once violated, even in ever so small a degree, . . . the cause of action is complete." Pearce v. N.C. State Highway Patrol Voluntary Pledge Comm., 312 S.E.2d 421, 424 (N.C. 1984); see also Christenbury Eye Ctr., P.A. v. Medflow, Inc., 802 S.E.2d 888, 892 (N.C. 2017) ("It is well settled that where the right of a party is once violated the injury immediately ensues and the cause of action arises." (internal quotation marks omitted)). Although "a statute of limitations should not begin running . . . until [the] plaintiff has knowledge that a wrong has been inflicted upon him . . . as soon as the injury becomes apparent to the claimant or should reasonably become

7

apparent, the cause of action is complete and the limitation period begins to run." Chisum v. Campagna, 885 S.E.2d 173, 188 (N.C. 2021); see also Thurston Motor Lines, Inc. v. Gen. Motors Corp., 128 S.E.2d 413, 415 (N.C. 1962) (explaining that a cause of action accrues "as soon as the right to institute and maintain suit arises").

The parties disagree as to whether Woods's claim accrued, or the statute of limitations was otherwise tolled, during the pendency of his voluntary internal appeals of Gerber's denial. As a federal court sitting in diversity and applying North Carolina law, this court is obliged to apply the jurisprudence of North Carolina's highest court, the Supreme Court of North Carolina. See Priv. Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002). When that court has not spoken directly on an issue, this court must "predict how that court would rule if presented with the issue." Id.

Here, neither the parties nor the court have identified any case from the Supreme Court of North Carolina — or any case arising under North Carolina law whatsoever — that speaks directly to this issue. However, the most analogous case before the court, Pearce v. N.C. State Highway Patrol Voluntary Pledge Comm., suggests that North Carolina courts would find that a voluntary internal appeals process does not delay the accrual of a breach of contract action or otherwise toll the statute of limitations. See 312 S.E.2d 421.

8

In Pearce, a retired patrolman brought an action for breach of contract against the highway patrol voluntary pledge fund committee, claiming that the committee wrongfully refused to pay him benefits when he retired due to disability. Id. Before the Supreme Court of North Carolina, the parties disagreed as to when the patrolman's claim accrued. Id. at 424. The committee argued that the claim accrued in July 1975, when the committee failed to make the first payment due to the patrolman under the contract, while the patrolman argued that his claim did not accrue until December 1978, when he received the committee's final denial of benefits. Id. Noting that "statutes of limitations are inflexible and unyielding," the court agreed with the committee and found that the claim accrued when the committee first failed to make payment on the policy. Id. at 425. As the contract did not require the patrolman to seek internal review of the denial prior to initiating suit, he "was at liberty," at that time, "to sue the [committee] to enforce his rights under the contractual agreement." Id. The court further explained that the "plaintiff cannot obtain solace from the fact that he was gratuitously granted a hearing." Id. On that basis, the court found his claim to be time-barred. Id.

The court further denied the patrolman's equitable tolling argument. Id. at 426. Specifically, the patrolman argued that equitable tolling was appropriate because he did not know whether

9

suit would be necessary until after the committee issued its final denial. Id. at 426-27. In rejecting this argument, the court explained, "a plaintiff's lack of knowledge concerning his claim does not postpone or suspend the running of the statute of limitations . . . . Additionally, equity will not afford relief to those who sleep upon their rights." Id. (internal quotation marks omitted).

This analysis is persuasive and applicable in the present case. Similar to the patrolman in Pearce, Woods received notice of Gerber's alleged breach when the insurer first refused to pay under the policy. The contract imposed no requirement that Woods seek internal review of this decision. As such, at the time of the initial denial, Woods both had notice of the breach and was legally able to enforce his rights under the contract through litigation. However, rather than initiating suit, Woods pursued multiple voluntary internal appeals of the decision, a process which extended over two years, until Gerber finally indicated it would not accept any additional appeal requests. Woods was under no obligation to pursue internal review, and the court declines to extend the statute of limitations because he elected to do so.

This conclusion is reinforced by the decisions of other courts. The Fourth Circuit, facing similar circumstances in the context of disability benefits, held that a plaintiff's breach of contract claim accrued when his disability benefits were first

10

terminated, rather than when the insurance provider officially closed his case. Curry v. Trustmark Ins. Co., 600 F. App'x 877, 883 (4th Cir. 2015) (applying Maryland law, but finding no precedent directly on point).[1]  In that case, the court reasoned that "[t]o hold that an insured cannot bring an action until an insurer formally denies the claim for benefits would . . . allow insurers to prevent policy holders from suing by continuing in perpetuity to consider the claims open and the denial of benefits preliminary.  This cannot be so." Id. (internal quotation marks and citation omitted).  The Ninth Circuit has similarly adopted the reasoning that "[i]f insurance companies were saddled with the situation that whenever [they] reconsidered an earlier decision it would inaugurate a new limitations period, companies would be reluctant to offer policy holders the luxury of a second evaluation." See Wagner v. Dir., Fed. Emergency Mgmt. Agency, 847 F.2d 515, 521 (9th Cir. 1988).

In this case, Woods's breach of contract claim accrued when Woods was first able to initiate suit on the claim, specifically when Gerber initially denied his claim on December 13, 2017.  As such, Woods was required to bring suit on the claim by December 13, 2020, at the latest.  His present suit, filed on January 6,

---

[1] Unpublished opinions of the Fourth Circuit are not precedential but are cited for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

11

2021, is therefore untimely and his claim is time-barred. Woods's claim will accordingly be dismissed.[2]

### C. Coverage Under the Policy

Defendants argue that, even if Woods's claim was not time-barred, his claim would be excluded under the terms of the policy because the alleged accident occurred during a medical procedure. (Doc. 7 at 19.) In response, Woods argues that Mrs. Woods did not have medical or surgical treatment that contributed directly to her death. (Doc. 10 at 5.) As Woods proceeds *pro se*, the court briefly addresses these arguments for his benefit.

Under North Carolina law, where the language in an insurance policy provision is clear and unambiguous, it will be accorded its plain meaning. Walsh v. Ins. Co., 144 S.E.2d 817, 820 (N.C. 1965). However, when language is subject to more than one interpretation, courts liberally construe policy provisions so as to afford

---

[2] Defendants also argue that Woods's claim is time-barred under the policy's proof of loss provision. (Doc. 7 at 18.) The court declines to decide the motion on this basis because the facts to support this claim do not "clearly appear on the face of the complaint." See Goodman, 494 F.3d at 464. Under North Carolina law, an insurer may waive defenses based upon a proof of loss provision "when the insurer denies liability, on grounds not relating to the proofs, during the period prescribed by the policy for the presentation of proofs of loss." Brandon v. Nationwide Mut. Fire Ins. Co., 271 S.E.2d 380, 383-84 (N.C. 1980). In this case, it is unclear from the complaint whether the initial denial was based, in part, upon the proof of loss provision. (See Doc. 2.) At the very least, however, Gerber's final denial did not rely on the proof of loss provision, nor did it suggest that any of the prior denials were based upon the proof of loss provision. (See Doc. 2-1.) It is therefore not clear whether Gerber may have waived its defenses based upon the proof of loss provision.

12

coverage "whenever possible by reasonable construction." State Cap. Ins. Co. v. Nationwide Mut. Ins. Co., 350 S.E.2d 66, 68 (N.C. 1986). Generally, exclusionary clauses are not favored and, if ambiguous, will be construed against the insurer. Id.

The relevant exclusionary clause provides that "[b]enefits are not paid for any loss caused by or resulting from[] . . . medical or surgical treatment (except surgical treatment required by the accident)." (Doc. 2-1 at 18.) North Carolina courts have not had occasion to interpret this language. However, the Fourth Circuit, applying similar tenants of construction under South Carolina law, found a similar exclusionary provision to be unambiguous. See Whetsell v. Mut. Life Ins. Co. of N.Y., 669 F.2d 955, 956 (4th Cir. 1982). In that case, plaintiff's life insurance policy contained an accidental death provision which provided, among its exclusions, that "the Company does not assume the risk of death caused or contributed to, directly or indirectly, . . . by treatment or operation for disease or bodily or mental infirmity." Id. After determining that South Carolina courts had not construed any similar exclusionary provisions, the court interpreted the policy based on its plain language and found the provision to unambiguously exclude medical accidents. Id. The court noted that "every court that has considered similar exclusionary clauses has held such provisions to exclude from coverage death caused by various mishaps occurring during the

13

course of medical treatment." Id.; see also Senkier v. Hartford Life & Accident Ins. Co., 948 F.2d 1050, 1052–54 (7th Cir. 1991)(death caused by a catheter that had become detached and punctured the heart was not covered under a policy that provided benefits for fatal accidental injuries, but excluded "medical or surgical treatment of a sickness or disease"); Pickard v. Transamerica Occidental Life Ins. Co., 663 F. Supp. 126, 127 (E.D. Mich. 1987) (death due to drinking of wrong solution was the type of medically-related mishap that medical treatment exclusion in accidental death benefit policy was intended to cover); O'Daniel v. Hartford Life Ins. Co., No. CIV. 11-5088-JLV, 2014 WL 3970081, at *3 (D.S.D. Aug. 13, 2014) (death caused by use of a malfunctioning fentanyl patch excluded as a "[l]oss resulting from . . . medical or surgical treatment").

Here, the policy exclusion closely resembles those discussed above and unambiguously excludes coverage for accidental deaths resulting from medical treatment. Woods argues that "Mrs. Woods did not have any medical or surgical treatment that contributed directly to her immediate death." (Doc. 10 at 5.) In so doing, Woods reads into the insurance policy requirements that are not present – namely, that the medical procedure "directly" cause "immediate death." (See id.) However, the text of the exclusionary provision is clear: "[L]oss[es] caused by or resulting from[] . . . medical or surgical treatment" are excluded

14

from the policy. Woods claims that "the cause of [Mrs. Woods's] death was an accidental excessive infusion of contrast dye during the cardiac catheterization procedure" which resulted in renal failure.[3] (Doc. 2 at 1-3; see also id. at 1 (indicating Mrs. Woods suffered a "medical accidental death").) Woods plainly argues that Mrs. Woods's death resulted from an accident occurring during the course of medical treatment. This claim falls squarely within the terms of the exclusion and therefore is not covered by the policy. As such, even if Woods's claim were not time-barred, the complaint would be dismissed for failure to state a claim upon which relief may be granted.[4]

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 6) is GRANTED and Plaintiff's complaint (Doc. 2) is DISMISSED.

---

[3] While the court accepts the allegations of the complaint as true at the present stage, Woods's allegations are in tension with the official certificate of death, which indicates that Mrs. Woods's immediate cause of death was cardiopulmonary collapse, accompanied with the underlying causes of metabolic acidosis and cardiogenic shock. (Doc. 2-8.) The certificate of death indicates that renal failure was a significant condition "contributing to death but not resulting in the underlying cause." (Id.)

[4] Defendants also argue that Mrs. Woods's death would be excluded under a separate exclusion within the policy as the death was not accidental, but the result of illness. (Doc. 7 at 21.) Because Mrs. Woods's death would be excluded under the medical treatment provision, this argument need not be reached.

                                    /s/   Thomas D. Schroeder
                                    United States District Judge

May 3, 2021